UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY L. BURROWS,<br><br>　　　　Plaintiff(s),<br><br>　v.<br><br>AT&T UMBRELLA BENEFIT PLAN<br>NO. 1,<br><br>　　　　Defendant(s). | No. C10-1375 BZ<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff is a former AT&T employee who participated in an ERISA welfare benefit plan managed by defendant.[1] In this action, plaintiff claims defendant's denial of her short-term disability benefits was unlawful under ERISA. Now before the Court are the parties' cross motions for summary judgment, and for the reasons explained below, **IT IS HEREBY ORDERED** that defendant's motion is **GRANTED** and plaintiff's motion is **DENIED.**

///

---

[1] The parties have consented to the Court's jurisdiction for all proceedings, including entry of final judgment under 28 U.S.C. § 636(c).

1

**I.   BACKGROUND FACTS**

      **A.   The Terms and Administration of the Plan**

Plaintiff participated in the AT&T Disability Income Program (the "Plan") while employed at AT&T. Under the Plan, she was eligible for short-term disability benefits if "because of Illness or Injury, [she was] unable to perform all of the essential functions of [her] job or another available job assigned by [AT&T]." Administrative Record (AR) 7. To support a disability claim, the Plan required plaintiff to furnish satisfactory medical documentation.

The Plan provided that defendant was the Plan Administrator. It conferred on defendant the sole and absolute discretion to interpret the provisions of the Plan, make findings of fact, and decide disputes. To the extent permitted by law, these interpretations, findings, and decisions would be "final and conclusive on all persons for all purposes." AR 33. Defendant also had the authority to delegate its powers and discretion to a designated Claims Administrator, who would have "full and exclusive authority and discretion to grant and deny claims and appeals." AR 26. The Plan specifically provided that the Claims Administrator's decisions were final and conclusive and not subject to further review.

Defendant appointed Sedgwick Claims Management Services as Claims Administrator, and delegated the entire claims review process to Sedgwick. Defendant did not have any control over Sedgwick's day-to-day decisions regarding the outcome of claims. Sedgwick was paid a flat fee for its

services and neither Sedgwick nor its employees received any payments or incentives for approving or denying claims. Sedgwick had no role in the Plan's funding, and was never a source of the funds used to pay Plan benefits. Sedgwick had no other affiliations or financial associations with defendant or any of its subsidiary companies.

### B.   Plaintiff's Disability Claim

Plaintiff worked for AT&T as an analyst for 26 years. Her position was classified as sedentary and it involved sitting, talking, and typing on a computer.[2] Due to various medical conditions, plaintiff did not return to work after January 31, 2007, and filed a claim with the Plan for short-term disability benefits.

On February 8, Sedgwick acknowledged receipt of plaintiff's claim and advised her to provide medical documentation to establish that her medical condition prevented her from performing her job duties. Over the next several months, plaintiff's numerous doctors and psychiatrists explained her ailments to Sedgwick through written reports and phone conversations. Plaintiff's medical problems included the following conditions: (1) depression; (2) panic and anxiety disorder; (3) bipolar affective disorder; (4) attention deficit disorder; (5) moderate carpal tunnel syndrome; (6) a partially torn rotator cuff; (7) sleep apnea;

///
///

---

[2] The record before the Court does not provide any further details about the plaintiff's job duties.

3

(8) fibromylagia; (9) herniated discs; and (10) neck pain.[3]

Based on the information provided by her medical professionals, Sedgwick initially granted plaintiff short-term disability benefits until March 1. On March 13, plaintiff was warned that her current documentation did not establish that she was unable to work and asked to provide further information if she wished to receive further benefits. Plaintiff and her providers eventually complied and her benefits were extended until April 24. Sedgwick cautioned plaintiff on multiple occasions that if she wanted her benefits extended past April 24 she would need to submit further proof that she could not perform the essential functions of her job.

Plaintiff did not provide any additional information to support her disability claim. On May 17, Sedgwick notified plaintiff that her benefits were terminated effective April 25 and she had the right to appeal. Plaintiff timely appealed, and provided Sedgwick with some additional documentation to support her disability. Sedgwick reviewed plaintiff's entire claim file, including the new documentation, and affirmed the initial denial because plaintiff did not show that her medical problems were so severe that she was unable to perform her job duties. With her administrative remedies exhausted, plaintiff filed this action.

**II.  LEGAL STANDARD FOR REVIEW**

The default standard of review for the denial of ERISA

---

[3]  This is not an exhaustive list of plaintiff's medical problems.

4

benefits is de novo.  <u>Salomma v. Honda Long Term Disability Plan</u>, --- F.3d ---, 2011 WL 768070 at *6 (9th Cir. 2011).  However, if the administrator has full discretion to determine eligibility, its decisions are reviewed only for abuse of discretion.  <u>Id.</u>  That is the case here, as the Plan unambiguously provides that Sedgwick, by way of defendant's delegation, has the sole and absolute discretion to grant and deny a participant's disability claims.  <u>See</u> <u>Safavi v. SBC Disability Income Plan</u>, 493 F.Supp.2d 1107, 1116 (C.D. Cal. 2007) (holding that the abuse of discretion standard applied because the plan administrator (AT&T) expressly delegated its discretionary authority to the claims administrator (Sedgwick)); <u>see</u> <u>also</u> <u>Edwards v. AT&T Disability Income Plan</u>, 2009 WL 650255 at *10-12 (N.D. Cal. 2009)(same).

   While plaintiff agrees that the abuse of discretion standard applies, she urges the Court to conduct a heightened review under <u>Metropolitan Life Insurance Co. v. Glenn</u>, 554 U.S. 105 (2008), and <u>Abatie v. Alta Health & Life Insurance Co.</u>, 458 F.3d 955 (9th Cir. 2001), because there is a conflict of interest between defendant and Sedgwick.  According to plaintiff, Sedgwick cannot be neutral and independent in its evaluations of claims because it is employed by defendant and its continued employment depends on satisfying defendant with its services.

    The rationale behind plaintiff's argument has previously been rejected.  In <u>Edwards</u>, the court faced an almost identical situation as the ERISA benefit plan at issue involved defendant acting as the Plan Administrator and

5

delegating its authority to evaluate disability claims to Sedgwick. 2009 WL 650255 at *10-11. Edwards held that the relationship between defendant and Sedgwick did not present a conflict of interest because Sedgwick was "solely responsible" for administering claims while the Plan Administrator was "solely responsible" for paying claims.[4] Id. Moreover, Edwards found that (1) Sedgwick had no direct economic interest in whether the claims were approved or denied because it received a flat fee for its services that was unrelated to its approval rate, (2) there were no incentives for Sedgwick or its employees to deny benefits, and (3) claim decisions were made by independent physician advisors. Id. Under these circumstances, there was no evidence of any conflict of interest a heightened review was therefore not required. Id. at *12.

This Court agrees with the holding and rationale in Edwards. Because the circumstances present in Edwards are similar to those here — and plaintiff has not presented evidence of Sedgewick's alleged bias — the Court finds that Sedgwick did not have a conflict of interest.

Thus, the Court reviews Sedgwick's decision to deny plaintiff's short-term disability claim for abuse of discretion. Sedgwick's denial will be upheld "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." Estate of Shockley v. Alyeska Pipeline

---

[4] Accordingly, this is not the situation that was present in Glenn because Sedgwick is not responsible for both paying out an employee's benefits and determining whether an employee is eligible for benefits.

6

1  Service Co., 130 F.3d 403, 405 (9th Cir. 1997)(quoting
2  MacDonald v. Pan American World Airways, Inc., 859 F.2d 742,
3  744 (9th Cir. 1988)).  Sedgwick will only be found to have
4  abused its discretion if its denial was illogical,
5  implausible, or without support in inferences that may be
6  drawn from the facts in the record.  Salomma, 2011 WL 768070
7  at *8.  "In other words, where there is no risk of bias on the
8  part of the administrator, the existence of a single
9  persuasive medical opinion supporting the administrator's
10 decision can be sufficient to affirm so long as the
11 administrator does not construe the language of the plan
12 unreasonably or render its decision without explanation."
13 Montour v. Hartford Life & Accident Ins. Co., 588 F.3d 623,
14 630 (9th Cir. 2009).

15 **III. <u>ANALYSIS</u>**

16      Applying the abuse of discretion standard, I conclude
17 that Sedgwick properly denied plaintiff's claim for short-term
18 disability benefits.  Because plaintiff received benefits
19 until April 24, the critical issue on these cross motions is
20 whether the denial of her benefits after this date is
21 supported by the record.[5]

---

[5]  When Sedgwick notified plaintiff that her benefits were granted until April 24, it cautioned her that she needed to submit additional documentation if she wanted her benefits extended past this date.  Sedgwick contacted plaintiff on April 17, 19, and 25 and notified her that further information was needed to support her disability claim.  Sedgwick also made several phone calls to plaintiff's medical professionals to inquire about plaintiff's health.  Plaintiff and her doctors did not provide any further documentation.  Nor does the record reflect that plaintiff asked for any additional time to furnish such documentation.  Under these circumstances, I cannot find that Sedgwick's initial May 17 denial of plaintiff's benefits

7

On July 26, plaintiff appealed the decision not to extend her benefits past April 24 to Sedgwick's Quality Review Unit. In support of her appeal, plaintiff provided Sedgwick with three new medical reports. Sedgwick interviewed plaintiff regarding her medical issues and then submitted the entirety of plaintiff's claims file, including the three new reports, to be reviewed by five independent physician advisors specializing in psychiatry, sleep medicine, orthopedic surgery, rheumatology, and pain management.[6] These physicians evaluated plaintiff's claim file, contacted her treating medical professionals, and submitted separate reports analyzing plaintiff's claim. All five physicians concluded that the denial of plaintiff's claim was appropriate. Sedgwick adopted these opinions and denied plaintiff's appeal on September 5.[7] As explained below, this denial did not constitute an abuse of discretion.

---

was unreasonable and an abuse of its discretion.

[6] Sedgwick retained these physicians through the Network Medical Review Company. Sedgwick has provided declarations from its employees that Sedgwick does not have any affiliation with these medical professionals and does not have a role in selecting them. Plaintiff did not present any evidence that these physicians were biased or had a conflict of interest.

[7] After her appeal was denied, plaintiff submitted additional documentation from her psychiatrists in support of her disability. Because Sedgwick did not consider this untimely documentation before making its decision, this Court also does not consider it when reviewing whether Sedgwick abused its discretion. See Patrick v. HP Employee Ben. Org. Income Prot. Plan, 638 F.Supp.2d 1195, 1207 (S.D. Cal. 2009)("it is settled law that a claims administrator cannot abuse its discretion by failing to consider evidence not before it at the time of its determination")(internal quotations and citations omitted).

The first report plaintiff submitted as part of her appeal was a sleep study that was performed on June 29. While the report concluded that plaintiff had sleep apnea, it did not place any restrictions or limitations on plaintiff performing her job. There was also no indication that plaintiff's sleep apnea was a new condition that had not been present when she had been working. The independent physician opined that the sleep study did not support plaintiff's claim that she could not work after April 24.

Plaintiff's second report in support of her appeal was from Dr. Min Zheng, her pain management provider. Plaintiff consulted with Dr. Zheng on July 10 and her report outlined plaintiff's history of medical conditions, including those that were still bothering plaintiff, such as her partially torn rotator cuff and fibromylagia. Nowhere in her report, however, did Dr. Zheng conclude that plaintiff was unable to perform her job duties. In fact, Dr. Zheng specifically noted that plaintiff's medication regimen made her pain tolerable. Plaintiff also informed Sedgwick that she had seen Dr. Zheng on August 7, but did not want to submit this medical record for consideration.

The above reports do not support a finding that plaintiff could not perform the essential functions of her job and should receive disability benefits. During the hearing, plaintiff's counsel conceded that plaintiff's inability to work did not stem from the issues in these reports (i.e., sleeping problems or various pain management issues), but was based on her mental health issues. This was the subject of

1   the last document submitted by plaintiff in support of her
2   appeal — a June 29 letter from her psychiatrist, Dr.
3   Jarczewski.
4        Dr. Jarczewski was the only medical professional who
5   opined that plaintiff was unable to work after April 24.  He
6   explained that plaintiff's attention deficit disorder as well
7   as other mental conditions impaired her ability to concentrate
8   and function in a work environment, and he estimated her
9   return to work date as October 1.  Dr. Jarczewski's letter was
10  virtually identical to the letter he had submitted on March 7.
11  The only significant difference between the two letters,
12  besides plaintiff's Adderall dosage being modified, is that
13  the return to work date was changed from April 1 to October 1.
14  Dr. Jarczewski noted in the letters that while plaintiff was
15  depressed and had trouble focusing, her judgment "seems to be
16  fully intact and she is fully oriented with no delusions or
17  hallucinations."  AR 548.  Plaintiff was also "overly friendly
18  and cooperative" with Dr. Jarczewski and his staff.  Dr.
19  Jarczewski did not provide any information about his treatment
20  of plaintiff after April 24.
21       Sedgwick had previously determined that Dr. Jarczewski's
22  March 7 letter was insufficient to show that plaintiff was
23  unable to work, in part because he failed to note any
24  objective findings that would support his diagnosis that
25  plaintiff could not perform her job duties.  While in his
26  initial reports Dr. Jarczewski outlined the objective reasons
27  for concluding that plaintiff was unable to work, such as
28  his personal observations that plaintiff had trouble

1  concentrating and her "mind wanders," AR 299, his March 7 and
2  June 29 reports did not include such findings.
3      Dr. Irwin Greenberg, the psychiatrist who was reviewing
4  plaintiff's claims file, was concerned about the lack of
5  objective findings from Dr. Jarczewski.  He contacted Dr.
6  Jarczewski who stated that he treated plaintiff on June 29 and
7  July 17.  Plaintiff reported to him that she had anxiety and
8  panic attacks, and Dr. Jarczewski observed plaintiff
9  fluctuating between "cheerfulness and tearfulness" and holding
10 her hands tight as well as shaking her leg.  Dr. Jarczewski,
11 however, could not report any specific objective findings of
12 attention, memory, concentration, or other cognitive problems.
13 Dr. Greenberg asked Dr. Jarczewski whether he had any practice
14 notes of the objective findings he made at these two sessions.
15 Dr. Jarczewski said that his practice notes were in his other
16 office and he would call back tomorrow to provide further
17 information.  The following day, Dr. Jarczewski reported fax
18 transmission problems with his practice notes and that he did
19 not have any additional documentation.  AR420.  Having
20 reviewed plaintiff's entire claims file, and discussed her
21 condition with her treating psychiatrist, Dr. Greenberg opined
22 that there were no objective findings of a psychiatric
23 disorder that would support plaintiff's claim that she was
24 unable to work after April 24.
25     Under the above circumstances, Sedgwick's decision to
26 deny plaintiff's benefits after April 24 was not an abuse of
27 discretion.  Plaintiff and her medical professionals were
28 afforded a meaningful opportunity to show that her medical

11

conditions impaired her ability to perform the essential functions of her job.  At argument, plaintiff admitted that the only medical professional who may have held such an opinion was Dr. Jarczewski.  But Dr. Jarczewski did not provide any objective findings to support his conclusion, though given the opportunity to do so.  While it was evident from plaintiff's self-reporting that she suffered from depression and anxiety, there was no evidence to support that these mental conditions were so severe that she could not perform her essential job functions.  For this reason, Dr. Greenberg concluded that the denial of plaintiff's claim was appropriate and Sedgwick adopted this conclusion.  Sedgwick's decision will only constitute abuse of discretion if it was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.  <u>Salomma</u>, 2011 WL 768070 at *8.  That is not the case here.[8]

    For the foregoing reasons, defendant did not abuse its discretion when it denied plaintiff's short-term disability benefits after April 24.  Defendant's motion for summary

///

///

///

---

    [8] Plaintiff also argues that Sedgwick's denial was improper because its physicians did not physically examine plaintiff or conduct a vocational assessment. "However, there is no statutory or other requirement that Defendant's consultants must examine Plaintiff or consult with Plaintiff's treating physicians prior to rendering their opinions." <u>Safavi v. SBC Disability Income Plan</u>, 493 F.Supp.2d 1107, 1121 (C.D. Cal. 2007).  That said, one wonders whether an independent medical examination could not have produced a more meaningful result than the review process Sedgwick followed.

12

1  judgment is therefore **GRANTED** and plaintiff's motion for
2  summary judgment is **DENIED**.
3  Dated: March 21, 2011

                                   _____
                                         Bernard Zimmerman
                                   United States Magistrate Judge

27  G:\BZALL\-BZCASES\BURROWS V. AT&T\ORDER_ON_CROSS-MOTIONS_FOR_SJ(2).wpd